# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN P.B., INDIVIDUALLY AND ON BEHALF OF M.F., <br>           **Plaintiff,** <br><br> v. <br><br> KHEPERA CHARTER SCHOOL, PEDRO RIVERA IN HIS OFFICIAL CAPACITY AS SECRETARY OF EDUCATION FOR THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION, AND COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION, <br>           **Defendants.** | CIVIL ACTION <br><br><br><br> NO. 18-885 |

## MEMORANDUM OPINION

Plaintiff moves for reasonable attorney's fees under the Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1415(i)(3)(B)(i)(I), in connection with her action against Defendants Khepera Charter School ("Khepera") and the Pennsylvania Department of Education (PDE). She requests $28,278.[1] While PDE concedes that a prevailing party is entitled to reasonable attorney's fees under the IDEA, it argues that Plaintiff is not entitled to the full amount requested.[2]

## I. BACKGROUND

The IDEA "requires that every child with a disability receive 'free appropriate public education'" (FAPE). *LeJeune G. v. Khepera Charter Sch.*, 2019 WL 3335138, at *1 (3d Cir., July 25, 2019) (quoting 20 U.S.C. § 1412(a)(1)(A)). "To ensure that a FAPE is provided to all

---

[1] In her opening memorandum, Plaintiff requested $29,898 in fees, a 5% reduction from her lodestar calculation. Plaintiff has since agreed to further reduce her fee request by six hours. She has also agreed to forego seeking time spent on her Reply briefs.

[2] Khepera has not responded to Plaintiff's request.

disabled children, the IDEA provides that federal funding be distributed to State educational agencies (SEAs), which, in turn, allocate those funds to local educational agencies (LEAs)." *Id.* While "LEAs are charged with directly providing or arranging for third-party provision of a FAPE," SEAs are responsible for "ensuring compliance with the IDEA and administering educational programs for disabled children." *Id.* (internal quotation omitted). When an LEA is unable to provide a FAPE—for example, due to insolvency—the SEA becomes responsible for "step[ping] into the breach." *See id.* at *3. In the litigation underlying this fee request, Plaintiff alleged that Khepera (the LEA) failed to provide her child, M.F., with a FAPE and demanded that PDE (the SEA) "step into the breach."

Plaintiff initiated legal action against Khepera in October 2016, though not, initially, in federal court. The IDEA contains procedural mechanisms to encourage dispute resolution without litigation. *See generally* 20 U.S.C. § 1415(f). For example, a parent who files a complaint alleging that an LEA denied her child a FAPE is entitled to an "impartial due process hearing" before a hearing officer. *Id.* And, prior to such a hearing, an LEA is required to convene a meeting, or "resolution session," to discuss and potentially resolve the complaint. Plaintiff and Khepera entered into a settlement agreement ("the Resolution Agreement") following such a session. In the Agreement, "Khepera agreed to provide $7,514 in compensatory education funds into a special needs trust by January 31, 2017, and pay Plaintiff's attorney's fees in the amount of $8,500." *Lejeune v. Khepera Charter Sch.*, 327 F. Supp.3d 785, 791 (E.D. Pa. 2018*), aff'd sub nom.*, LeJeune, 2019 WL 3335138 at *1. Khepera ultimately breached the Agreement, failing to pay either the $7,514 or $8,500. In June 2017, Plaintiff's attorney notified PDE that Khepera had breached both the Agreement.

Then, in November 2017, Plaintiff sued Khepera and PDE in federal court, alleging that

Khepera denied M.F. a FAPE and breached its agreement with Plaintiff, and characterizing Khepera as "either unwilling or unable" to fulfill its obligations. The Complaint also alleged that PDE was responsible for remedying these breaches and providing M.F. with a FAPE.

Meanwhile, PDE was investigating Plaintiff's claims, and in a March 26, 2018 letter, it offered to pay the $7,514 in compensatory education payments owed by Khepera. Plaintiff, however, was dissatisfied with PDE's offer as it did not provide all the relief agreed to by Khepera in the Implementation Agreement. Rather than paying the $7,514 directly to the trust, PDE determined that the funds were to be administered through the Pennsylvania Training and Technical Assistance Network (PaTTAN). Unlike the trust funds, the PaTTAN funds could not be used for recreational activities, private placements and post-secondary tuition. PDE's offer also did not include attorney's fees.

On April 27, 2018, Plaintiff moved for summary judgment against both Khepera and PDE and PDE cross-filed for summary judgment against Plaintiff. The Court granted Plaintiff's motion for summary judgment on August 29, 2018, on the basis that Khepera breached the Resolution Agreement, but noted that "matters do not end there because Khepera is experiencing financial difficulties and has refused to pay its obligations under Plaintiff['s] agreement[]." *Lejeune*, 327 F. Supp. 3d at 797.

With respect to PDE's motion for summary judgment, the Court granted it in part and denied it in part. With respect to PDE's responsibility for Khepera's obligations, "the IDEA does not require an SEA to step in and fulfill IDEA resolution agreements when an LEA is merely 'unwilling' to comply;" however, an LEA *is* required "to step into the breach" where a Plaintiff has demonstrated that an SEA is "unable" to do so. *Id.* at 800. Because Plaintiff had indeed proven that Khepera was unable to fulfill its obligations, PDE was responsible for

providing M.F. with a FAPE, and, to that end, for paying the remaining $7,514 in compensatory education funds. *Id.* However, because PDE was not involved "in the underlying dispute giving rise to the attorney's fees liability, it [was] not obligated pay them." *Id.* at 803. The Court explained noted that "[i]f, as Plaintiff[] contend[s], fee shifting was integral to a free appropriate public education, Congress would have mandated it as it has done in countless other federal statutes." *Id.*

Plaintiff moved for attorney's fees following summary judgment, but both parties asked for a stay while Plaintiff appealed the Court's partial grant of summary judgment in PDE's favor. The decision was affirmed in all respects. *LeJeune*, 2019 WL 3335138 at *4. Now that the appeal has concluded, Plaintiff once again moves for reasonable attorney's fees under the IDEA. Her fee petition requests compensation for services provided by three members of Berney & Sang: founding partner David Berney, associate Kevin Golembiewski and former associate Morgen Black-Smith.[3]

## II.  DISCUSSION

"Under the IDEA, a court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party[4] who is the parent of a child with a disability." *Ida D. v. Rivera*, 2019 WL 2615481, at *6 (E.D. Pa. June 26, 2019) (quoting 2 U.S.C. § 1415(i)(3)(B)(i)(I)); *see also M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017). The burden of proving that a particular request is reasonable rests on the requesting party. *See Rode v. Dellarciprete*, 892 F.2d 1117, 1183 (3d Cir. 1990).

---

[3] Ms. Black-Smith has since left Berney & Sang.

[4] PDE does not deny that Plaintiff was the prevailing party.

*i.    Reasonableness*

PDE characterizes Plaintiff's requested fee as unreasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Rode*, 892 F.2d at 1183 (internal quotations omitted). "Once the court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar," which "is presumed to be the reasonable fee." *Id.* Though "the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable with the submission of evidence supporting both the hours and rate claims," "[i]n a statutory fee case, the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *Finnegan v. Smith*, 2019 WL 1052013, at *2 (M.D. Pa. Mar. 5, 2019) (internal citations omitted). Additionally, the "district court has the discretion to . . . adjust the lodestar downward [to] account[] for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims." *Id.*[5]

a. <u>Reasonableness of rates</u>

Plaintiff seeks an hourly rate of $495 for David Berney, $325 for Morgen Black-Smith and $270 for Kevin Golembiewski. PDE proposes a rate of $425 for Mr. Berney, $270 for Ms. Black-Smith and $255 for Mr. Golembiewski.

"The 'starting point' in determining the appropriate hourly rate is the attorneys' usual billing rate. The Supreme Court has directed that the district court should then consider the 'prevailing market rates' in the relevant community," *Pennsylvania Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998) (internal quotations and citations

---

[5] Downward adjustments to a lodestar "should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." *Rode*, 892 F.2d at 1183.

omitted), for attorneys of "comparable skill, experience, and reputation," *Rode*, 892 F.2d at 1183. "[A]ffidavits of non-party attorneys with personal knowledge of the hourly rates customarily charged in the relevant community" may constitute evidence of the market rate. *Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp.2d 480, 492 (D.N.J. 1998). Additionally, "[t]he fee schedule established by Community Legal Services, Inc. (CLS) has been approvingly cited by the Third Circuit as being well developed and has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (internal quotations omitted).

As of the time of the fee petition's submission, Mr. Berney had practiced law for 27 years, Ms. Black-Smith for 13 years[6] and Mr. Golembiewski for 6 years. Mr. Berney "has successfully litigated hundreds of education law cases and regularly teaches and published on special education law," and Ms. Black-Smith and Mr. Golembiewski have also published on special education law and successfully litigated education cases. *Ida D.*, 2019 WL 2615481, at *7. It is undisputed that the rates requested in the fee petition are Mr. Berney, Ms. Black-Smith and Mr. Golembiewski's usual billing rates for fee paying clients. All three attorneys have also provided declarations detailing their education, credentials and experience; these declarations, as well as declarations from Philadelphia civil rights attorneys attesting to Mr. Berney, Ms. Black-Smith and Mr. Golembiewski's experience and skill and to the reasonableness of their rates, are included in Plaintiff's request. Tellingly, the rates charged by all three attorneys are also *below* those outlined in the CLS schedule for attorneys with comparable experience.[7]

---

[6] Though Ms. Black-Smith graduated law school in 2006 and entered practice in 2008, she only began practicing special education law in 2015.

[7] In his declaration, Mr. Berney explains that he raised the firm's rates in 2014 after determining that Berney & Sang's rates were "substantially under market." However, the firm's current rates remain below the CLS schedule.

Nevertheless, PDE challenges not only the rates themselves but also their increase over time. First, PDE argue that counsels' rates are unreasonable because Mr. Berney, Ms. Black-Smith and Mr. Golembiewski billed lower rates at the onset of this litigation—and, in Mr. Golembiewski's case, requested a lower rate in the first fee petition—than they do now. However, the *current* market rate, rather than the date of service or the date of a *prior* fee petition, is the relevant indicator for purposes of calculating a reasonable rate. "The current market rate is the rate *at the time of the fee petition*, not the rate at the time the services were performed." *Lanni v. New Jersey*, 259 F.3d 146, 149–50 (3d Cir. 2001) (emphasis added). Second, PDE argue that Ms. Black-Smith's rate should be reduced to reflect the $270 rate awarded in *Nicole B. v. Sch. Dist. of Philadelphia*, 2017 WL 783757 (E.D. Pa. Feb. 28, 2017) and *Jada H. v. Rivera*, 2019 WL 2387929, at *2 (E.D. Pa. June 6, 2019). However, *Nicole B.* concluded before this case was filed, and "[h]ourly rates that were set for a specific attorney in previous court decisions do not generally constitute record evidence unless those rates were set for the same attorney and for the same type of work *over a contemporaneous time period.*" *Nicole B.*, 2017 WL 783757, at *3 (internal quotations omitted) (emphasis added). While *Jada H*. was filed after this case, the court reduced Ms. Black-Smith's rate on the basis of her "limited time practicing special education law." However, this court is not bound by the *Jada H.* decision, and like the court in *Ida D.*, considers Ms. Black-Smith's legal experience as a whole. *See Ida D. v. Rivera*, 2019 WL 2615481, at *8.

Plaintiff has submitted enough evidence to prove the reasonableness of the requested rates, and Defendants' arguments concerning the rates' change over time does not disprove their reasonableness.

      b. Reasonableness of hours

Plaintiff has provided detailed time-sheets in support of her request. While Defendants do not dispute the accuracy of the time-sheets, they do argue that the number of hours requested are unreasonable. Generally, "[h]ours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (internal citation omitted).

      *i. Fee Petition Preparation*

PDE argues that Plaintiff's counsel expended excessive time on fee petitions. In her opening brief, Plaintiff requests 11 hours for time spent by Mr. Berney and 12 hours for time spent by Mr. Golembiewski on fee petitions.[8] Then, in her reply brief, Plaintiff voluntarily deducts 6 hours from Mr. Golembiewski's time, "in the interest of compromise." Including Plaintiff's voluntary reductions, Plaintiff thus requests $7,065 in connection with fee petition preparation.[9]

  "[T]ime spent on fee petition preparation is compensable." *Frazier v. Se. Pennsylvania Transp. Auth.*, 1993 WL 38401, at *1 (E.D. Pa. Feb. 11, 1993); *see also Maria C. ex rel. Camacho v. Sch. Dist. of Philadelphia*, 142 F. App'x 78, 83 (3d Cir. 2005) (affirming district court's fee award, including fees in connection with fee petition litigation); *Rode*, 892 F.2d at 1192 (rejecting district court's determination that 101.6 hours spent on fee petition was excessive). And, like time spent on any other aspect of litigation, time spent on a fee petition must be reasonable to be recoverable. *Id.*; *see also Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1190 (3d Cir. 1995) (explaining that a district court should

---

[8] These figures include both the time spent on the fee petition at issue here, and the fee petition filed prior to the stay.

[9] The Third Circuit has suggested that a district court should calculate a separate lodestar for time related to fee petition preparation (11 x $495) + (6 x $270) = $7,065. *See Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985).

8

consider whether these services require the same quality of expertise and skill as the underlying dispute). Plaintiff's petition required researching complex issues of law, such as joint and several liability in the IDEA context, and analyzing other recent IDEA fee awards, such as that in *Ida D*. "The novelty and complexity" of issues are properly reflected "in the number of billable hours recorded by counsel." *See Blum v. Stenson*, 465 U.S. 886, 898 (1984). Considering the nature of the issues raised and Plaintiff's voluntary reduction, the time requested for fee petition preparation is not excessive.

### ii. Litigation Strategy

PDE challenges the 5.2 hours—2 hours from Mr. Berney and 3.2 hours from Mr. Golembiewski—spent attempting to subpoena certain bank records from Khepera and responding to Khepera's Motion to Quash those subpoenas. The subpoenas "request[ed] a broad range of documents" which the court ultimately denied as "burdensome and overly broad." Though Plaintiff claimed bank records were relevant to demonstrating Khepera's insolvency (and hence its inability to fulfil its obligations to Plaintiff and the necessity of PDE's involvement), the particular documents requested were unnecessary. Khepera had already admitted its liability and its inability to pay, and Plaintiff had already successfully discovered other financial records, prior to her unsuccessful discovery attempt on the banks. Because the requested discovery was unnecessary, and because the request lengthened the litigation, 5.2 hours shall be deducted from Plaintiff's request. *See Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000) (upholding district court's decision to deduct hours for

unnecessary discovery).[10]

      c. <u>Partial Success</u>

While PDE does not dispute Plaintiff's prevailing party status, PDE does characterize Plaintiff's success as "limited" and calls for a 25% downward departure on Plaintiff's lodestar.

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). And, "[t]his will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* "[W]here the successful and unsuccessful claims involve a common core of facts, the lawsuit cannot be viewed as a series of discrete claims and the district court should instead focus on the significance of the overall relief obtained." *I.W. v. Sch. Dist. of Philadelphia*, 2016 WL 147148, at *20 (E.D. Pa. Jan. 13, 2016) (internal quotations and alterations omitted). Indeed, a downward departure may be warranted even where a Plaintiff has "obtained significant relief" "if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 440.

This is such a case. Plaintiff's claims against Khepera and PDE were interrelated in that they involved a common set of facts and sought the same relief (fulfillment of the Agreement) under the same statute (the IDEA) for related harms (breach of the Agreement and denial of a FAPE). And, Plaintiff did secure an important victory in holding PDE responsible for providing M.F. with a compensatory education. But, she also failed in significant respects. Plaintiff was

---

[10] Additionally, the Court advised Plaintiff's counsel during a conference call on March 30, 2018 that Plaintiff would not recover attorney's fees in connection with these discovery requests. *See Levy v. Comm'r*, 87 T.C. 794, 800 (1986) (citing petitioner's failure to heed the court's warnings during the course of a conference call as a factor in its denial of petitioner's motion to set aside a dismissal); *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *7 (S.D.N.Y. Dec. 18, 2009) (citing plaintiff's failure to heed the court's warnings during the course of a conference call as a factor in its decision to grant summary judgment in favor of defendants).

denied her preferred method of compensation from PDE—*i.e.*, administering the compensatory education funds through PaTTAN rather than the trust—and was denied attorney's fees. In sum, she failed in holding PDE liable for all of Khepera's obligations. As a result, she failed to obtain more than half of the relief requested.[11]

    *Ida D.* is instructive. Though Plaintiff cites *Ida D.* for the proposition that its lodestar should *not* be reduced, the plaintiff in *Ida D.* obtained greater relief than Plaintiff. As a result of *Ida D.*, PDE was required to fulfill Khepera's obligations up to and including Khepera's agreement to pay the plaintiff's child's tuition to another school—relief denied to Plaintiff. *See Ida D.*, 2018 WL 6046456, at *13. *I.W.* is also instructive. Plaintiffs in *I.W.* sued for attorney's fees under the IDEA following the conclusion of a due process hearing against their child's school district. *I.W.*, 2016 WL 147148, at *20. Though plaintiffs achieved "significant success" as a result of the hearing—including securing 1300 hours in compensatory education from the school district—they also failed to obtain relief related to matters such as "extracurricular activities" and "compliance with [a] . . . consent decree," and their lodestar was consequently reduced by 30%. *Id.* at 20.

    Considering the scope and significance of Plaintiff's success—she not only succeeded in obtaining specific relief from PDE, but also succeeded in establishing PDE's general duty to "step into the breach" created by an operational but insolvent charter schools—a 30% reduction is unwarranted. Nevertheless, because Plaintiff also failed in a significant respect—she did not succeed in establishing Khepera and PDE's obligations as coextensive—the lodestar will be reduced by 10% as against PDE, exclusive of the hours spent on fee petition preparation. Because Plaintiff succeeded entirely in her claims against Khepera, there will be no reduction as

---

[11]Plaintiff sought $16,014 in compensation ($7,514 + $8,500), but PDE was only held liable for $7,514, or 47% of that amount.

against Khepera.

## ii. *Joint and Several Liability*

Plaintiff argues that Defendants should be held jointly and severally liable for her attorney's fees, *i.e.*, that both Khepera and PDE should be liable for the entire fee award.[12] Though PDE contests the applicability of joint and several liability, "[t]he allocation of fee liability is a matter committed to the district court's discretion." *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990) (explaining that a court may consider factors such as "the relative culpability of the parties" and "the proportion of time spent litigating against each defendant" in determining a fee award).

Joint and several liability is a theory of recovery which may, but does not necessarily, apply in a multi-defendant suit; "joint and several liability . . . requires that the plaintiffs . . . establish that each defendant acted in concert to 'produce a single, indivisible injury.'" *Niblack v. Murray*, 2016 WL 4086775, at *4 (D.N.J. July 29, 2016) (quoting *Harper v. Albert*, 400 F.3d 1052, 1061–62 (7th Cir. 2005)). That is not the case here.[13] While Khepera and PDE were both found liable in the underlying action, they were not found liable for the same injuries. *See Lejeune*, 327 F. Supp. 3d at 803. Khepera was found liable for breaching its Agreement with Plaintiff, but PDE was only found liable to the extent that those breaches denied M.F. a FAPE. *Id.* As a result, the parties were not ordered to provide the same relief: while Khepera was held to the terms of the Resolution Agreement, PDE was not (*i.e.*, PDE was not required to pay the

---

[12] Plaintiff also argues that PDE should be directed to satisfy Khepera's award if the Court issues separate fee awards. As support, Plaintiff cites a single case describing the SEA as the "central point of accountability" under the IDEA. It does not follow that PDE is responsible for all of Khepera's obligations, including its attorney fee payments.

[13] The Court assumes without deciding that joint and several liability may apply in the IDEA attorney's fees context.

compensatory education funds to the trust or to pay Plaintiff's attorney's fees).

Because Defendants did not produce "a single indivisible injury," joint and several liability does not apply. The fee award will therefore be calculated on the basis of the disaggregated lodestar[14] provided by Plaintiff: $3,340 as against Khepera and $28,131.50 as against PDE.[15]

## III. CONCLUSION

Plaintiff shall be awarded $24,452.53 in attorney's fees. Khepera shall be ordered to pay attorney's fees in the amount of $3,160.02,[16] and PDE shall be ordered to pay attorney's fees in the amount of $21,292.51.[17]

**September 26, 2019**       **BY THE COURT:**

/s/Wendy Beetlestone, J.

**WENDY BEETLESTONE, J.**

---

[14] Defendants do not contest the accuracy of this division.

[15] These figures do not include Plaintiff's voluntary 5% lodestar reduction.

[16] Plaintiff initially requested $3,340.50 for hours billed against Khepera. The following reductions then apply for a total of $3,160.02.
- $167.03: Plaintiff's voluntary 5% lodestar reduction ($3,340.50 - 5%)
- $13.45: Plaintiff's voluntary 6-hour reduction from Mr. Golembiewski's time on fee petition preparation, proportionate to the hours billed (.1 hrs, or .83% of Mr. Golembiewski's 12 hours on fee petition preparation) to Khepera for fee petition preparation (6 - .83% x 270)

[17] Plaintiff initially requested $28,131.50 for hours billed against PDE. The following reductions then apply for a total of $21,292.51.
- $1,406.58: Plaintiff's 5% voluntary downward departure to total lodestar ($28,131.50 - 5%)
- $1,971.86: 10% downward departure for partial success, exclusive of PDE's portion of the fee lodestar (($7,065 x 99.17%) - 10%)
- $1,606.55: Plaintiff's voluntary 6-hour reduction from Mr. Golembiewski's time on fee petition preparation, proportionate to the hours billed (11.9 hrs, or 99.17% of Mr. Golembiewski's 12 hours on fee petition preparation) to Khepera for fee petition preparation (6 - 99.17% x 270)
- $990: Mr. Berney's hours on bank subpoenas (2 x 495)
- $864: Mr. Golembiewski's hours on bank subpoenas (3.2 x 270)